UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LUIS ANTONIO TZUN-MAGANA,<br><br>Defendant. | Case No. 21-cr-00306-EMC-1<br><br>**ORDER DENYING MOTION TO DISMISS INDICTMENT**<br><br>Docket No. 103 |

## I. INTRODUCTION

In 2021, Defendant was indicted with a charge of illegal reentry under 8 U.S.C. § 1326. Defendant brings the present motion to dismiss the indictment. Defendant is seeking to collaterally attack the underlying removal order, arguing his Fifth Amendment due process rights were violated in the November 4, 2015 hearing.

## II. FACTUAL AND PROCEDURAL HISTORY

Defendant has entered the United States illegally numerous times. He was twice allowed voluntary return in 2003 and 2007. *See* Declaration of AUSA Evan M. Mateer in Support of Government's Opposition to Defendant's Second Motion to Dismiss (Mateer Decl.) Exhibit ("Ex.") A. Then, by 2009, Defendant again reentered the country, and reported he was a victim of a strong-armed robbery to the police. *See* Declaration of Gabriela Bischof (Bischof Decl.) Ex. F at 3. Then in 2014, he was convicted of misdemeanor assault pursuant to California Penal Code Section 240 on July 14, 2014. Mateer Decl. Ex. C. The police report for the incident indicated that May 14, 2014, Defendant had assaulted his girlfriend while her five-year-old son was in the house.

*See* Mateer Decl. Ex. D.  The report explains that Defendant was intoxicated and asked for car keys; when his girlfriend did not comply, grabbed her by the neck and pushed her.  *Id.*  This was all done in the presence of the five-year-old child.  *Id.*  Defendant was sentenced to 1 day in jail for this conviction. Mateer Decl. Ex. C.

On March 26, 2015, Defendant was convicted of one count of Robbery (California Penal Code 212-5(c)) and one count of Embezzlement (California Penal Code 508) and Grand Theft (California Penal Code 487(a)).  Mateer Decl. Ex. E.  The charges stemmed from two incidents Defendant committed while he was on bail for previous offenses.  First, on July 25, 2014, Defendant was arrested after he was found to have stolen more than $1,000 from the cash register at his employer, Kmart.  Bischof Decl. Ex. H.  The thefts took place over several days and were captured on surveillance footage.  *Id.*  Then, on August 1, 2014, Defendant conducted a robbery of a liquor store in San Bruno.  Bischof Decl. Ex. I.  The police report describes Defendant entering the store, pointing an apparent firearm (the firearm was later determined to be a replica) at an employee, and demanding that she provide money from the cash register.  *Id.*  Defendant was able to steal $300-400.  *Id.*  Defendant was sentenced to 475 days in prison for these offenses.  Mateer Decl. Ex. E.

A Notice to Appear was filed on August 27, 2015.  Bischof Decl. Ex. J.  Attorneys John Ricci and Frank Sprouls represented Mr. Tzun-Magaña in the removal proceedings.  A motion for bond was made and denied.  Exhibits E and F.  The motion for bond included documentation of a 2009 incident in which Mr. Tzun-Magaña was assaulted and mugged, and a U Visa law enforcement certification request.  Bischof Decl. Ex. F at 2-9.

On October 23, 2015, Defendant's attorney filed a "Motion to Advance."  Bischof Decl. Exhibit B.  In it, he wrote "[t]he Respondent has made the decision that he does not wish to pursue any relief while incarcerated.  In this case, this would be pre-hearing Voluntary Departure however pre-Hearing VD is not available to an aggravated felon."  *Id.* at 2.  He described Mr. Tzun-Magaña's § 212.5(c) conviction as a "categorical crime of violence under 8 USC 16(a)" and "thus not saved" by Supreme Court decisions indicating that the residual clause in § 16(b) is unconstitutionally vague.  *Id.*  Mr. Sprouls asked for the earliest possible hearing date, where he

1   asserted that Mr. Tzun-Magaña "will simply accept an Order of Removal." *Id*. Defendant was
2   then removed. Bischof Decl. Ex. C

3   On June 15, 2016, Defendant was apprehended reentering the country near San Diego.
4   Mateer Decl. Ex. G. He plead guilty to violating 8 U.S.C. § 1326 – Illegal Reentry of a Removed
5   Alien and sentenced to 6 months in prison. Mateer Decl. Ex. H.

6   On February 3, 2017, Defendant was sentenced to a two-year prison term for violating a
7   36-month probation term stemming from his 2015 convictions of Robbery, Embezzlement, and
8   Grand Theft. After serving this sentence, DHS reinstated his removal order and Defendant was
9   removed a second time on December 14, 2017. Mateer Decl. Ex. I.

10  At some point subsequent to his second removal, Defendant again re-entered the country
11  illegally. He came to the attention of immigration authorities on March 2, 2021, after being
12  arrested for several domestic violence incidents. On August 10, 2021, a grand jury indicted
13  Defendant with illegal reentry following a prior removal, in violation of Section 1326(a). Dkt. 9.

14  On January 26, 2022, Defendant moved to dismiss the indictment, arguing that, under the
15  framework laid out in *Arlington Heights*, Section 1326 violates the Equal Protection Clause of the
16  Fifth Amendment to the Constitution. *See* Dkt. 32. On May 8, 2024, Defendant notified the Court
17  that, based on the Ninth Circuit's decision in *Carillo-Lopez*, a hearing was no longer necessary on
18  the motion. *See* Dkt. 82. The Court accordingly denied the motion. Dkt. 83.

19  On January 17, 2025, Defendant filed a second motion to dismiss the indictment pursuant
20  to 8 U.S.C. § 1326(d), advancing a new argument: that his 2015 deportation proceeding violated
21  his due process rights and is thus invalid. Dkt. 103 (Mot.).

### III.    LEGAL STANDARD

To convict a defendant of illegal reentry under 8 U.S.C. § 1326, the government must establish the defendant left the United States under order of exclusion, deportation, or removal, and then illegally reentered. A defendant charged with a violation of § 1326 has a Fifth Amendment due process right to collaterally attack the underlying removal order serving as a predicate element of the charge. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987).

1   To collaterally attack an underlying removal order, defendants must show three elements: (1) they
2   have exhausted the administrative remedies that were available to seek relief from removal; (2) the
3   removal proceedings improperly deprived them of judicial review; and (3) the entry of the order
4   was fundamentally unfair. *See* 8 U.S.C. § 1326(d).

## IV. ANALYSIS

Defendant argues two separate due process violations warrant a dismissal of his 2015 indictment because entry of the removal order was fundamentally unfair: 1) his attorney was ineffective by incorrectly conceding that Mr. Tzun-Magaña's prior California robbery conviction was an aggravated felony, failing to argue for voluntary departure, and waiving his right to appeal, and 2) the Immigration Judge ("IJ") failed to advise him of his right to seek relief from removal and his right to appeal the removal order. Mot. at 4-5. Defendant argues these due process violations satisfy each of the three elements needed to attack the underlying removal order. The Government argues that even if these due process violations did occur, Defendant fails to satisfy the first two prongs, and that Defendant fails to satisfy the third prong.

Because the Court finds Defendant has failed to satisfy prong three, the Court need not reach the argument of whether Defendant can satisfy all three prongs with due process violations. The Court analyzes each of Defendant's claims for due process violations in turn.

### 1. Ineffective Assistance of Counsel

Because Defendant's underlying removal hearing is a civil hearing, there is no Sixth Amendment right to counsel. Instead, Defendant must rely on the Fifth Amendment to establish ineffective assistance of counsel. "The standard for establishing ineffective assistance of counsel under the Fifth Amendment in immigration cases is higher than the Sixth Amendment standard set forth in *Strickland v. Washington*[.]" United *States v. Zamudio*, 787 F.3d 961, 965 (9th Cir. 2015). However, courts "may begin [their] analysis within the Sixth Amendment framework." *Torres-Chavez*, 567 F.3d at 1100.

Under *Strickland*, counsel's assistance is ineffective when it falls "below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). A convicted

1  defendant "must identify the acts or omissions of counsel that are alleged not to have been the
2  result of reasonable professional judgment." *Id*. at 690.  Ineffectiveness claims "alleging a
3  deficiency in attorney performance are subject to a general requirement that the defendant
4  affirmatively prove prejudice." *Id*. at 693.  To prove prejudice, "the question is whether there is a
5  reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt
6  respecting guilt." *Id*. at 695.  "To prevail on *Strickland*'s prejudice prong, there must be 'a
7  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding
8  would have been different.  A reasonable probability is a probability sufficient to undermine
9  confidence in the outcome.'" *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005) (citing
10 *Strickland*, 466 U.S. at 694).  "The likelihood of a different result must be substantial, not just
11 conceivable." *Harrington v. Richter*, 562 U.S. 86, 112, (2011); accord *Strickland*, 466 U.S. at 693
12 ("It is not enough for the defendant to show that the errors had some conceivable effect on the
13 outcome of the proceeding."); *see also Thornell v. Jones*, 144 S. Ct. 1302, 1310, 1314 (2024)
14 (emphasizing, in the context of a habeas petition in a death penalty case "[a] reasonable
15 probability is a probability sufficient to undermine confidence in the outcome. That requires a
16 substantial, not just conceivable, likelihood of a different result" and emphasizing the reviewing
17 court's responsibility to evaluate the strength of all evidence in context of the record).

18     The standard for assessing a due process claim for counsel's error in the context of
19 immigration proceedings and the prejudice that must be demonstrated to establish a claim for
20 relief has been stated variously.  *See*, *e.g*., *Jie Lin v. Ashcroft*, 377 F.3d 1014, 1027 (9th Cir. 2004)
21 (stating to prove a defendant was prejudiced by counsel's alleged ineffectiveness, an
22 undocumented defendant "only needs to show that he has *plausible* grounds for relief.") (quoting
23 *United States v. Jimenez–Marmolejo,* 104 F.3d 1083, 1086 (9th Cir.1996)); *Ortiz v. INS*, 179 F.3d
24 1148, 1153 (9th Cir.1999) (stating prejudice results when "the performance of counsel was so
25 inadequate that it may have affected the outcome of the proceedings."); *Iturribarria v. I.N.S*., 321
26 F.3d 889, 899–900 (9th Cir. 2003) ("[I]neffective assistance of counsel in a deportation hearing
27 results in a denial of due process under the Fifth Amendment only when the proceeding is so
28 fundamentally unfair that the alien is prevented from reasonably presenting her case.") (citing

United States District Court
Northern District of California

*Rodriguez–Lariz v. INS,* 282 F.3d 1218, 1226 (9th Cir.2002)).

More recent Ninth Circuit decisions have made clear that the requisite showing under the due process clause of the Fifth Amendment is stricter than under the Sixth Amendment. *United States v. Zamudio*, 787 F.3d 961, 965 (9th Cir. 2015) ("The standard for establishing ineffective assistance of counsel under the Fifth Amendment in immigration cases is higher than the Sixth Amendment standard set forth in *Strickland v. Washington* . . ."). In *Torres-Chavez v. Holder*, the Ninth Circuit summarized the standard as follows:

> We have explained that "removal proceedings are civil," *Lara–Torres v. Ashcroft,* 383 F.3d 968, 973 (9th Cir.2004), and that litigants "in removal proceedings have no Sixth Amendment right to counsel," *Nehad v. Mukasey,* 535 F.3d 962, 967 (9th Cir.2008). Nevertheless, we have held that aliens' counsel can "be so ineffective as to deprive them of their Fifth Amendment right to due process of law." *Id.* Specifically, we have held that an alien's right to due process can be violated by "egregious conduct that threatens the fairness of the proceeding," including egregiously deficient performance by the alien's lawyer. *Id.* at 971; *accord Magallanes–Damian v. INS,* 783 F.2d 931, 933 (9th Cir.1986). In assessing an attorney's performance, "[t]he proper focus of our inquiry is whether the proceeding is so fundamentally unfair that the alien is prevented from reasonably presenting her case." *Lara–Torres,* 383 F.3d at 974 (citation and internal quotation marks omitted). As for prejudice, the alien must also show "substantial prejudice" by demonstrating that "the alleged violation affected the outcome of the proceedings." *Id.* at 973.
>
> Although aliens "shoulder a heavier burden of proof" in establishing ineffective assistance of counsel under the Fifth Amendment than under the Sixth Amendment, *Magallanes–Damian,* 783 F.2d at 933, we may begin our analysis within the Sixth Amendment framework established by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hernandez,* 524 F.3d at 1017; *Matter of Velasquez,* 19 I. & N. Dec. 377, 382 (1986). If an attorney's performance passes muster under *Strickland,* it cannot render an alien's proceeding fundamentally unfair. In other words, there is no violation of the alien's Fifth Amendment right to due process if the alien's counsel was effective for Sixth Amendment purposes.

*Torres-Chavez v. Holder,* 567 F.3d 1096, 1100 (9th Cir. 2009).

      a) <u>Deficient Performance: Failure to raise arguments, and failure to argue for voluntary departure.</u>

Defendant argues his counsel was ineffective for failing to make arguments that Defendant's robbery conviction was not an aggravated felony, or a crime of violence under 8 U.S.C. § 16(a) because of evolving understandings in the State of California that all robberies

6

1 were not necessarily crimes of violence. Defendant submits an expert declaration from an
2 immigration attorney to support his argument. *See* Ediger-Seto Decl, Docket No. 104. The
3 Government does not submit any evidence to contradict the expert's declaration.
4     In particular, Defendant argues there were "colorable" and "winning" arguments that
5 "California robbery was not a categorical aggravated felony because it was not a categorical match
6 to the crime of violence provision set forth at 8 U.S.C. § 16(a)[1]," and that Defendant's prior
7 counsel's performance was deficient because he failed to raise any of them. Mot. at 6.
8 Defendant's expert testifies that any reasonable attorney would have raised these arguments, as
9 many immigration attorneys during that time were advancing these arguments.
10     The Government argues that the IJ was bound by Ninth Circuit law that had previously
11 held (and still governed at the time of Defendant's immigration proceeding herein) that robbery
12 was a crime of violence 18 U.S. Code § 16. In 2008, the Ninth Circuit in *United States v. Becerril-*
13 *Lopez*, applied the categorical approach to a conviction of robbery and a provision of the federal
14 Sentencing Guidelines on the meaning of "crime of violence." *See* 541 F.3d 881, 892
15 (9th Cir. 2008) ("[I]f a conviction under Cal. Penal Code § 211 involved a threat not encompassed
16 by generic robbery, it would necessarily constitute generic extortion and therefore be a 'crime of
17 violence' under U.S.S.G. § 2L1.2.") Although the definition in the federal sentencing guidelines
18 at the time (U.S.S.G. § 2L1.2) differed slightly from that used for immigration cases, 8 U.S.C. §§
19 1101(a)(43)(F) ("crime of violence" defined by 18 U.S.C. § 16), the Ninth Circuit held the
20 distinction was not meaningful, and that therefore, robbery was a "crime of violence" in the
21 immigration context as well. *Nieves Medrano v. Holder*, 590 F.3d 1057, 1057-58 (9th Cir. 2010).
22     Defendant counters that at least two arguments were available to Defendant's attorney.

---

[1] 8 U.S.C. §§ 1101(a)(43)(F) (INA) makes reference to 18 U.S. Code § 16 - Crime of violence defined:
The term "crime of violence" means—
    **(a)** an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
    **(b)** any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

1  The first argument that could have been raised was that the "force or fear" language in California
2  Penal Code § 211 was overbroad and not a match to U.S.C. § 16(a). California defines robbery as
3  "the felonious taking of personal property in the possession of another, from his person or
4  immediate presence, and against his will, accomplished by means of force or fear." Cal. Penal
5  Code § 211. In *Johnson v. United States*, 559 U.S. 133, 140 (2010), the Supreme Court held that
6  the term "physical force" requires violent force, rather than mere physical contact. One year later,
7  and years before Mr. Tzun-Magaña's removal hearing, a California appellate court upheld a
8  California robbery conviction on the basis of fear without an explicit threat of physical force.
9  *People v. Morehead*, 191 Cal. App. 4th 765, 775 (2011). *Morehead* thus injected uncertainty as to
10 whether robbery is a "categorical match" to a crime of violence. Counsel in the case at bar failed
11 to advance this argument despite *Johnson* and *Morehead*.

12 The second argument Defendant claims should have been advanced was that California
13 robbery does not require willfulness; recklessness and perhaps less is sufficient. In 2006, the
14 Ninth Circuit held in a case involving misdemeanor domestic violence that "neither recklessness
15 nor gross negligence is a sufficient *mens rea* to establish that a conviction is for a crime of
16 violence under § 16(a)." *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1130 (9th Cir. 2006). More
17 is required with respect to scienter. Then in 2011, the California Supreme Court held that robbery,
18 in particular, can be committed with accidental or reckless force. *People v. Anderson*, 51 Cal. 4th
19 989, 995 (2011). Subsequently, the Ninth Circuit held that the *mens rea* element for robbery
20 under California law was thus broader than that required for a crime of violence under the Armed
21 Career Criminal Act ("ACCA") and thus was not categorically a crime of violence thereunder.
22 *United States v. Dixon*, 805 F.3d 1193, 1198 (9th Cir. 2015). The statutory language of the ACCA
23 is effectively identical to the definition of a crime of violence in 18 U.S. Code § 16. Though that
24 Ninth Circuit decision on robbery had not been rendered at the time of Defendant's immigration
25 proceeding herein, the issues had been fully briefed to the Ninth Circuit at the time Defendant's
26 attorneys conceded that Defendant's robbery conviction was a crime of violence. *United States v.*
27 *Dixon*, 805 F.3d 1193, 1198 (9th Cir. 2015). To be sure, it was not until recently that the Ninth
28 Circuit expressly applied this *mens rea* argument to the immigration context specifically, finding

8

that a California conviction for robbery was not a crime of violence under 18 U.S. Code § 16. *Gutierrez v. Garland*, 106 F.4th 866, 875-76 (9th Cir. 2024).

Defendant argues that the law was increasingly clear that either of the *mens rea* or quantum of force arguments would eventually succeed; the IJ was free to find robbery was not a crime of violence because the IJ would not have been bound by *Nieves Medrano v. Holder* or *United States v. Becerril-Lopez* because neither case had addressed the *mens rea* or quantum of force arguments.

The Court finds Defendant's argument persuasive. Though immigration judges are bound by circuit law, immigration judges can consider "meritorious argument[s] that such precedent is no longer binding." *Alvarado v. Holder*, 759 F.3d 1121, 1130 (9th Cir. 2014), abrogated on other grounds by *Santos- Zacaria v. Garland*, 598 U.S. 411 (2023). Ample arguments were available to Defendant's prior counsel to argue that the crime of robbery was not a "categorical match" to the "crime of violence" 18 U.S. Code § 16. As Defendant's expert testifies, "a simple Google search" would have made counsel aware of the evolving law, and counsel should have been aware of fully-briefed arguments in *United States v. Dixon*, 805 F.3d 1193, 1198 (9th Cir. 2015) which portended the ultimate decision of the Ninth Circuit. Instead, counsel erroneously conceded the point and failed to argue for voluntary departure. Counsel's performance was thus constitutionally deficient under *Strickland*.

The Court thus turns to whether there was resulting prejudice.

b) Prejudice

Defendant argues to establish a due process violation caused prejudice, he need only show that he had a "plausible" basis for relief from deportation, or that there was "some evidentiary basis" to grant voluntary departure. Mot. at 10, citing *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1050 (9th Cir. 2012). However, *Strickland* mandates a higher standard to prove "prejudice" flowed from counsel's deficient performance. "To prevail on *Strickland*'s prejudice prong, there must be 'a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir.

9

2005) (citing *Strickland*, 466 U.S. at 694) (emphasis added). And as noted above, in the context of immigration proceedings, the defendant must show "substantial prejudice" by demonstrating that "the alleged violation affected the outcome of the proceedings." *Lara–Torres v. Ashcroft,* 383 F.3d 968, 973 (9th Cir.2004).

In assessing the likelihood of whether the IJ, upon finding eligibility for voluntary departure (assuming the IJ determined that the robbery conviction did not constitute a crime of violence), would have granted voluntary departure, the court must assess various factors. Those factors concern the noncitizen's negative and positive equities. *See Valdez-Novoa*, 780 F.3d at 917 (citing *Matter of Gamboa*, 14 I. & N. Dec. 244, 248 (BIA 1972)). The negative equities include "the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident." *In re Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (BIA 1999). The positive equities include "elements such as long residence in [the United States], close family ties in the United States, or humanitarian needs." *Id.*

Defendant argues, and provides some case support, that although Defendant had some negative equities, voluntary departure has been granted to individuals with immigration records and more severe criminal records that Defendant herein. Mot. at 10-11; Reply at 5-8. On the positive side, Defendant emphasizes he was a caregiver to his fiancé's son, a provider for his family, and had community ties. *Id.* On the other hand, the Government argues, and provides alternative case support, that Defendant's negative equities far outweighed his positive equities, and that there was little likelihood that voluntary departure would have been granted. Opp. at 13-16. The Government emphasizes Defendant's repeated immigration violations, crossing the border numerous times following voluntary departures and his removal proceedings, and Defendant's extensive criminal record which included violence and violations of law while under supervision.

It is Defendant's burden to show that his counsel's performance rose to the level of a Fifth Amendment due process violation. *See Maravilla v. Ashcroft*, 381 F.3d 855, 858 (9th Cir. 2004).

After weighing the positive equities against the negative equities, the Court finds Defendant has not established "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005) (citing *Strickland*, 466 U.S. at 694).

Weighing against the Defendant is the fact that Defendant repeatedly reentered the United States, following both voluntary departures and later his removal proceeding. Additionally, Defendant committed his most serious offenses *while* he was on bail for the domestic violence offense against his fiancé. As Defendant's counsel admitted in the bond hearings for the 2015 removal, Defendant appeared to be a danger to his community and was denied bond. Bischof Decl. Ex. E. Thus, even if Defendant's prior counsel had raised available arguments that raised doubt about whether Defendant's robbery crime was a categorical crime of violence, the IJ would have had a record before them that showed a Defendant who was not deterred by prior interactions with law enforcement—whether by grants of voluntary returns by ICE to Mexico or by bail and the requirements imposed by bail granted by courts. *See, e.g., In re Arguelles-Campos*, 22 I. & N. Dec. 811, 819 (BIA 1999) (noting that illegal reentry after voluntary departure shows an alien "simply viewed grants of voluntary departure as a means to avoid immigration proceedings, or bring them to a close, by leaving the United States briefly and reentering illegally in hopes of not being apprehended again").

Though Defendant claims mitigating factors to explain his conduct—that he needed to provide for his family and had a gambling addiction—there is no evidence that Defendant was remedying these issues at the time of the 2015 hearing or 2016 deportation proceedings. Though Defendant can point to some cases where IJs granted voluntary departure in worse cases, Reply at 5-8, this merely demonstrates that an IJ has generally wide discretion to grant voluntary departure and thus it is possible that voluntary departure may be granted even in what appears to be an extreme case. *See In re Arguelles-Campos*, 22 I&N Dec. 811, 819 (BIA 1999) (voluntary-departure discretion is "broad"). But the fact that voluntary departure might be *possible* does not establish the *likelihood* of such relief being granted in the instant case. In light of the Defendant's record of extensive law violations and disregard for the law, the few cases cited by Defendants are

11

1   not enough to satisfy Defendant's burden of showing a "probability sufficient to undermine

2   confidence in the outcome."

3         Additionally, as the Government points out, the "positive equities" that Defendant points

4   to, are undercut by the context surrounding them. In 2016, Defendant did not have any U.S.

5   citizen family members. Defendant wrote a letter to his then girlfriend to request to arrange a

6   marriage *after* he faced deportation. Bischof Ex. F at 9-10. Additionally, his fiancé and her child

7   were the victims in the domestic violence offense. *See United States v. Gonzalez-Valerio*, 342

8   F.3d 1051, 1057 n.5 (9th Cir. 2003) (noting that noncitizen's claimed attachment to his family in

9   the United States was "obviously undermined by his spousal and child abuse convictions").

10  Though Defendant's girlfriend submitted a letter that Defendant worked "two jobs," Bischof Decl.

11  Ex. G at 2, the record lacks evidence about the extent of these jobs. In fact, the evidence on the

12  record about his job history shows that his job at K-Mart was terminated because of his

13  embezzlement.

14        Though the Court finds deficient performance by Defendant's prior attorneys, Defendant

15  has failed to establish prejudice. He has not established facts undermining confidence in the

16  outcome of the 2015 immigration proceeding at issue.

17          c)  <u>Deficient Performance: Waiver of Right to Appeal Removal Order</u>

18  Defendant also argues counsel's performance was deficient because counsel "summarily

19  waived Mr. Tzun-Magaña's right to appeal the removal order and with it, any denial of such

20  relief." Mot. at 5. Because of counsel's deficient performance above, Defendant was denied the

21  right to appeal the IJ's hypothetical denial of Defendant's claim for voluntary departure. The

22  Court turns to whether prejudice flowed from this deficiency.

23          d)  <u>Prejudice</u>

24        As noted above, there is not a sufficient likelihood that the IJ would have granted

25  voluntary departure. Without relief granted by the IJ, Defendant could have obtained relief only

26  by appealing to the BIA. But even if Defendant's counsel had not summarily waived Defendant's

27  right to appeal the removal order, Defendant likely would foregone such an appeal because he was

28  in custody. As evidenced by Defendant's "Motion to Advance," Defendant desired to speed up

1  the immigration process.  Bischof Decl. Ex. B.  Defendant was denied bond and did not "wish to

2  pursue any relief while incarcerated."  *Id*.  The time it would take to prosecute such an appeal

3  would have weighed heavily against any decision to pursue it given his custodial status.  It is

4  neither plausible, nor is there a reasonable probability that the result of the proceeding would have

5  been different because there is no reasonable likelihood that Defendant would have prosecuted an

6  appeal to the BIA.  The Court thus fails to find any prejudice.

        e) U Visa

8    Defendant also argues he was prejudiced because he was a "plausible candidate for relief

9  from removal because his cooperation as the victim in a criminal case could have qualified him for

10  a U-Visa."  Mot. at 11.  It is unclear how Defendant's U Visa argument connects to the due

11  process claims, but the Court will analyze it along with the claim for ineffective assistance of

12  counsel.

13    A noncitizen is eligible for status under the U Visa program if (1) he suffered substantial

14  physical or mental abuse as a result of having been a victim of one of the enumerated crimes; (2)

15  he possesses or possessed information concerning the criminal activity; (3) he has been helpful, is

16  being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a

17  Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal,

18  State, or local authorities investigating or prosecuting the criminal activity; and (4) the criminal

19  activity violated the laws of the United States or occurred in the United States (including in Indian

20  country and military installations) or the territories and possessions of the United States.  *See* INA

21  § 101(a)(15)(U).  The administrative process first requires a petitioner to obtain a certification

22  from a law enforcement official that he was the victim of a crime, the crime is a recognized crime

23  under the U Visa program, and that he was, is or likely to be helpful in the investigation, or

24  prosecution of the criminal activity.  Then, after submission, the United States Citizenship and

25  Immigration Services ("USCIS") does a check to ensure and verify that all required evidence is

26  present.  Then USCIS either by granting the U Visa or placing the petitioner on a waitlist.  *See* 8

27  C.F.R. § 214.14(d)(2).  A statutory cap limits the grant of U Visas to 10,000 per fiscal year.  INA

28  § 214(p)(2)(A).  If the cap has not been reached, USCIS adjudicates the petition.  If the cap has

been reached, the petitioner is placed on a waitlist. Placement on the waitlist triggers deferred action, and the petitioner may apply for work authorization under 8 C.F.R. § 274a.12(c)(14).

The record indicates that the U Visa law enforcement certification request was submitted by Defendant herein in the motion for bond to the IJ. Bischof Decl, Ex. F at 2-9. The incident in which Defendant was a victim of a crime he reported to the SFPD occurred *6 years prior* to the deportation hearings in 2015. Defendant had submitted a request to SFPD for a U Visa certification but had not received it by the time of the 2015 hearing. There is no evidence the SFPD sought further information from Defendant regarding the old 2009 incident. U Visa forms had not been submitted to the USCIS. Defendant had not been granted U Visa status or placed on the U Visa waitlist. On the record as it stands, it does not appear there is any likelihood that Defendant would have received a U Visa. Defendant's expert only states further "factfinding" "could have been conducted." Esiger-Seto Decl. ¶ 32. Further, it is not clear that the IJ did *not* consider any potential for Defendant receiving a U Visa after having reviewed the record himself.

Defendant cites to *Cisneros-Rodriguez,* 813 F.3d 748, 759 (9th Cir. 2015) and *Valdivias-Soto,* 112 F.4th 713, 720 (9th Cir. 2024) to support his claim that a U Visa could have led to voluntary departure, but neither of those cases is on point with the present record. Opp. at 17. In both of these cases, the defendant was denied counsel and advised incorrectly by the IJ or DHS that relief was not available to them because of their criminal histories when, in fact, each defendant had a plausible chance of applying for and receiving a U Visa. These cases involved documented evidence of the harm the defendants suffered from the crimes of which they were victims. Defendant fails to cite to any case finding a due process violation where, as here, Defendant was represented by counsel and the Defendant (and his counsel) along with the IJ were aware that Defendant had begun the process of applying for a U Visa to no avail and where there was no indication that such visa was forthcoming.

There is not a viable claim of deficient performance or prejudice.

Defendant's due process claim for ineffective assistance of counsel is **DENIED**.

14

2. <u>IJ Advisement of Rights</u>

For general due process violations, the Ninth Circuit has held that "[a]n underlying removal order is fundamentally unfair if: (1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Ubaldo–Figueroa*, 364 F.3d 1042, 1048 (9th Cir.2004) (internal quotation marks and citation omitted).

a) <u>Due Process Rights</u>

Defendant argues that because the IJ did not *personally* advise the Defendant of his rights to seek relief from removal and to appeal, Defendant's due process rights were violated.

The record is sparse on what occurred at the November 4, 2015 hearing. The hearing lasted three and a half minutes. *See* Dkt. No. 113-1 ("Informal Transcription of Immigration Proceedings"). A Spanish interpreter was present. *Id*. The IJ confirmed on the record that he had an off the record conversation with Defendant's counsel, though there is no record that conversation was translated. The majority of the hearing was a conversation between the IJ, Defendant's counsel, and the government attorney. *Id*. It appears that the only portions that may have been translated for the Defendant were when the IJ asked the Defendant his best language, confirmed the Defendant was represented by Mr. Ricci, and told the Defendant that "pursuant on the advice of his counsel, that we have ordered him removed to Mexico. Does he have any objection." *Id*. Defendant seemed to answer no. It is unclear whether the IJ stating: "For the record. So waived at this time. Thank you." was also translated for the Defendant. *Id*.

The Ninth Circuit has held that "[d]ue process requires that an applicant be given competent translation services" if they do not speak English. *He v. Ashcroft*, 328 F.3d 593, 598 (9th Cir. 2003). BIA policy "does not require translation of an alien's entire deportation or exclusion proceeding," though "[c]ertain phrases of the proceeding are translated as a matter of course." *El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Rev.*, 959 F.2d 742, 751–52 (9th Cir. 1991). It up to the discretion of the IJ to "determine whether protection of an alien's reasonable opportunities requires additional translation." *El Rescate Legal Servs., Inc.,* 959 F.2d at 752. The Court cannot presume as a matter of law that the entire proceedings were translated for

15

1  Defendant.

2        The Ninth Circuit has held that even though where a defendant had counsel present, a violation of due process occurs where the IJ "did not inform [defendant] in English or in Spanish that he had the right to appeal the Immigration Judge's decision. The IJ did not ask [defendant] if he understood his right to appeal; the IJ only mentioned an appeal in the form of a question in English addressed to [defendant's] counsel. That question and counsel's reply were not translated into Spanish for [defendant's] benefit." *United States v. Ubaldo-Figueroa,* 364 F.3d 1042, 1049, fn.8 (9th Cir. 2004). Here, there is a closer question. Counsel, Mr. Ricci, stated to the IJ under oath that Defendant admitted the allegation in the NTA, was not seeking any form of relief, and that he would not appeal an order of removal, Bischof Decl. Ex. A at 1:30-1:45. Arguably this provides evidence that Defendant was informed, at least by counsel, of his right to appeal. However, this colloquy between counsel and the IJ was not translated into Spanish for Defendant's benefit, and the IJ did not expressly confirm with Defendant that he was waiving his rights to advisement and to appeal. This arguably violated due process.

The Court then turns to whether any prejudice flowed as a result.

        b)  <u>Prejudice</u>

Though the Court finds the IJ deprived Defendant of his due process rights, it is not plausible (and hence not probable) that prejudice flowed. As noted above, there is not a sufficient likelihood that the IJ would have granted voluntary departure. Even if Defendant would have been *personally* informed by the IJ of his right to appeal (though there is no evidence in the record that Defendant was not informed of this right by his attorney) and thought about exercising it, he likely would have foregone such an appeal because he was in custody. As evidenced by Defendant's "Motion to Advance," Defendant desired to speed up the immigration process. Bischof Decl. Ex. B. Defendant was denied bond and did not "wish to pursue any relief while incarcerated." *Id*. The time it would take to prosecute such an appeal would have weighed heavily against any decision to pursue it given his custodial status. Moreover, as the Government points out, the IJ asked Defendant directly if he had any objection to removal to Mexico, and Defendant said "no, no objection." *Id.* at 2:20-3:00. Any failure by the IJ to inform Defendant directly of his right to

appeal was likely inconsequential.

Thus, Defendant's due process claim for alleged IJ failure is **DENIED.**

**V.     CONCLUSION**

Defendant's motion to dismiss his indictment is **DENIED**.

**IT IS SO ORDERED**.

Dated: May 16, 2025

_____
EDWARD M. CHEN
United States District Judge

17